**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Donna Doris Willey

      v.                                       Case No. 15-cv-368-JL

Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**REPORT AND RECOMMENDATION**


Pursuant to 42 U.S.C. § 405(g), Donna Willey moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, this matter should be remanded to the Acting Commissioner for further proceedings consistent with this report and recommendation.


**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the

resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[ ] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).


## Background

The parties have submitted a Joint Statement of Material Facts (doc. no. 15).  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Willey left her job as a bar manager in January of 2012, and she applied for DIB about a week later.  In addition to working as a bar manager, Willey has also worked as a telemarketer.

In September of 2012, Dr. Gurcharan Singh, a state agency

consultant who did not examine Willey, performed an assessment
of her residual functional capacity ("RFC"),[1] based upon a review
of her medical records.  His Physical RFC Assessment form lists
diagnoses of degenerative disc disease of the cervical spine,
fibromyalgia, diabetes mellitus, hypothyroidism, and obesity.
In his assessment, Dr. Singh opined that Willey could lift
and/or carry 20 pounds occasionally and 10 pounds frequently,
could stand and/or walk, and could sit, both with normal breaks,
for about six hours in an eight-hour workday.  In addition, Dr.
Singh opined that Willey could: (1) frequently balance, stoop,
kneel, and crouch; (2) occasionally climb ramps/stairs and
crawl; and (3) never climb ladders/ropes/scaffolds.  Dr. Singh
also found that Willey was limited to frequent overhead
reaching, but had an unlimited capacity for handling, fingering,
and feeling.

In October of 2013, Dr. Fereshteh Soumekh, a neurologist
who had seen Willey on a bimonthly basis for more than seven
years, completed a Musculoskeletal RFC Questionnaire on Willey.
Dr. Soumekh began by noting diagnoses of cervical and
lumbosacral spondylosis.[2]  She then opined that Willey could: (1)

---

[1] "Residual functional capacity" is a term of art that means
"the most [a claimant] can still do despite [her] limitations."
20 C.F.R. § 404.1545(a)(1).

[2] Spondylosis is defined as "[a]nkylosis of the vertebra;

sit for 15 minutes at one time, and about four hours in an
eight-hour workday (with normal breaks); and (2) stand for five
to ten minutes at a time, and about two hours in an eight-hour
workday.  She further opined that Willey needed to: (1) walk
around for two minutes every 15 minutes; (2) shift positions at
will from sitting, standing, or walking; (3) lie down every two
hours; and (4) elevate her legs three or four times every eight
hours.  In addition, Dr. Soumekh opined that Willey could: (1)
occasionally lift less than ten pounds but never lift more than
that; (2) occasionally bend and twist at the waist; (3) use her
right hand and arm for grasping, fine manipulation, and reaching
about for about 20 percent of an eight-hour workday; and (4) use
her left hand and arm to perform those activities for about 50
percent of a workday.  Finally, Dr. Soumekh opined that Willey
would be absent from work about twice a month as result of her
impairments or treatment for them.

     After the Social Security Administration denied Willey's
claim for DIB, she received a hearing before an Administrative
Law Judge ("ALJ").  At the hearing, the ALJ posed two
hypothetical questions to a vocational expert ("VE").  This is

---

often applied nonspecifically to any lesion of the spine of a
degenerative nature." Stedman's Medical Dictionary 1813 (28th
ed. 2006).  Ankylosis is the "[s]tiffening or fixation of a
joint as the result of a disease process, with fibrous or bony
union across the joint; fusion."  Id. at 95.

the ALJ's first hypothetical question:

> Q  .  .  .  [A]ssume that [Willey] can lift 20 pounds
> occasionally, 10 pounds frequently, stand or walk for
> six [hours in an eight-hour workday], sit for six
> [hours], [has] unlimited use of her hands and feet to
> operate controls and push and pull.  Should never
> climb ladders, can occasionally climb stairs and
> crawl, the remaining postural[ ] [capacities] are at
> frequent.  She can frequently reach overhead
> bilaterally, otherwise unlimited reaching, handling,
> fingering, and feeling, and should avoid concentrated
> exposure to extreme cold and hazards.  If we assume
> that as the first hypothetical, do you have an opinion
> as to whether she could perform her prior work?

Administrative Transcript (hereinafter "Tr.") 228-29.  The VE

testified that a person with the RFC described by the ALJ could

perform Willey's past relevant work as a telemarketer and as a

bar manager.  The ALJ's examination of the VE continued:

> Q  .  .  .  I'd like you to assume she can occasionally
> lift less than 10 pounds, can sit for 15 minutes at a
> time, stand for five minutes at a time, during an
> eight-hour workday can stand or walk for two hours,
> sit for four, and would need to walk for two minutes
> every 15 minutes, would need to shift positions at
> will, would need to lie down every two hours, would
> need to elevate her legs 20 degrees three to four
> times [a day], and can use her right upper extremity
> 20 percent of the time and her left 50 percent of the
> time, and can occasionally bend and twist at the
> waist.  If we assume that as the second hypothetical,
> do you have an opinion as to whether she could perform
> any of her prior work?

> A  In my opinion, she would not, your honor, and I
> would say that it is based on the requirement of
> laying down every two hours.

> Q  So, would there be any jobs that she could do,
> assuming the second hypothetical?

A   Not in my opinion.

Tr. 229-30.

After Willey's hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she should never climb ladders.  The claimant can occasionally climb stairs and crawl, but can perform the remaining postural activities frequently.  She can frequently reach overhead bilaterally, and should avoid concentrated exposure to extreme cold and hazards.
>
> . . . .
>
> 6.  The claimant is capable of performing past relevant work as a telemarketer and bar manager.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

Tr. 193, 197.

## Discussion

A.   The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether Willey was under a disability from

7

January 26, 2012, through February 14, 2014.

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that she is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability

8

as supported by the testimony of the claimant or other
witness; and (3) the [claimant]'s educational
background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)

B.   Willey's Claims

Willey claims that the ALJ erred in assessing her RFC

because he did not properly: (1) weigh Dr. Soumekh's opinions;

and (2) evaluate her credibility.  Willey's first claim is

persuasive, and dispositive.

Under the regulations that govern the evaluation of claims

for DIB, the opinions of acceptable medical sources who have

treated a claimant are generally entitled to substantial weight.

Those regulations provide:

> Generally, we give more weight to opinions from [a
> claimant's] treating sources, since these sources are
> likely to be the medical professionals most able to
> provide a detailed, longitudinal picture of [a
> claimant's] medical impairment(s) and may bring a
> unique perspective to the medical evidence that cannot
> be obtained from the objective medical findings alone
> or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.
> If we find that a treating source's opinion on the
> issue(s) of the nature and severity of [a claimant's]
> impairment(s) is well-supported by medically
> acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other
> substantial evidence in [a claimant's] case record, we
> will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).  When an ALJ does not give

controlling weight to the opinion of a treating source, he must
determine how much weight to give it by applying the following
factors: (1) the length of the claimant's treatment relationship
and the frequency of examination; (2) the nature and the extent
of the treatment relationship; (3) the supportability of the
opinion; (4) the consistency of the opinion with the record as a
whole; (5) the specialization of the source who gave the
opinion; and (6) other factors.[3]  See 20 C.F.R. §§
404.1527(c)(2)-(6).  Moreover, "[i]n many cases, a treating
source's opinion will be entitled to the greatest weight and
should be adopted, even if it does not meet the test for
controlling weight."  Social Security Ruling 96-2p, 1996 WL
374188, at *4 (S.S.A. July 2, 1996).  In any event, the ALJ must
"always give good reasons . . . for the weight [he] give[s] [a
claimant's] treating source's opinion."  20 C.F.R. §
404.1527(c)(2).

    In his decision, the ALJ had this to say about Dr.
Soumekh's opinions:

> Finally, in October of 2013, the claimant's treating
> physician, Dr. Soumekh opined that the claimant could
> sit for about 4 hours and stand or walk for about two
> hours during an 8-hour workday.  He opined that the

---

[3] As examples of "other factors," the regulations identify:
(1) the source's understanding of the SSA's disability programs
and evidentiary requirements; and (2) "the extent to which [the]
acceptable medical source is familiar with the other information
in [a claimant's] case record."  20 C.F.R. § 404.1527(c)(6).

claimant could occasionally lift less than 10 pounds,
and use her right hands [sic] and arms [sic] only 20
percent of the workday.  He added that she could use
her left hand and arm only 50 percent of the workday,
and was expected to be absent from work about twice
per month.  The opinions of Dr. Soumekh are given
little weight, as they are not supported by the
totality of the evidence on record.  During the
period, the claimant made little to no complaints of
limitations in her hands, and made absolutely no
mention of hand impairments at the hearing.  Further,
her reported daily activities indicate that she would
be able to tolerate at least light lifting and light
exertion sitting and standing requirements.  Such
abilities are also supported by the objective findings
during the period, including normal gait, good
strength, and good range of motion.  As such, the
opinions of Dr. Singh are given more weight, as they
are more consistent with the evidence on record as a
whole.

Tr. 196 (citation to the record omitted).

The most glaring problem with the ALJ's consideration of
Dr. Soumekh's opinions is that he did not mention Dr. Soumekh's
opinion that Willey needed to lie down every two hours.  See Tr.
959.  In her testimony at Willey's hearing, the VE identified
that particular limitation as precluding Willey from performing
any job.  Yet, while he discussed Dr. Soumekh's limitations on
Willey's capacity for using her fingers and hands, and her
capacities for lifting, sitting, and standing, the ALJ said
nothing about Dr. Soumekh's opinion that Willey needed to lie
down every two hours.  Necessarily, he did not give any reason,
much less a good reason, for discounting that opinion.  Given
the centrality of that opinion to the VE's testimony, and the

ALJ's obligation to "evaluate every medical opinion," 20 C.F.R.
§ 404.1527(c), the ALJ's failure to evaluate Dr. Soumekh's
opinion on Willey's need to lie down every two hours is an error
that requires this matter to be remanded.

Remand will also give the ALJ an opportunity to revisit the
reasons he did give for discounting several of Dr. Soumekh's
other opinions, as those explanations do not appear to qualify
as good reasons.  With respect to what qualifies as a good
reason,

> the notice of the . . . decision must contain <u>specific
> reasons</u> for the weight given to the treating source's
> medical opinion, <u>supported by the evidence in the case
> record</u>, and must be <u>sufficiently specific</u> to make
> clear to any subsequent reviewers the weight the
> adjudicator gave to the treating source's medical
> opinion and the reasons for that weight.

<u>Id.</u> (emphasis added).  The ALJ's explanations in this case fall
short of that standard.

When addressing the factor of consistency with the record
as a whole,[4] <u>see</u> 20 C.F.R. § 404.1527(c)(4), the ALJ stated that
Willey's "reported daily activities indicate that she would be
able to tolerate at least light lifting and light exertion
sitting and standing requirements."  Tr. 196.  But, the ALJ did

---

[4] There are hints that the ALJ might also have considered
the factor of supportability, <u>see</u> 20 C.F.R. § 404.1527(c)(3),
but a close reading of the ALJ's decision reveals that he
limited his analysis to consistency.

not point to any specific daily activities that demonstrate
Willey's capacity to meet those exertional requirements.  And he
did not specifically identify any evidence in the case record
that supports his assertion.  Thus, while he focused on a
relevant factor, the ALJ did not give a good reason, i.e., one
that is adequately specific and supported, for his determination
that Dr. Soumekh's opinions on Willey's capacities for lifting,
sitting, and standing were inconsistent with the record as a
whole.

The ALJ also stated that Willey's capacities for light
lifting and light-exertion sitting and standing were "supported
by the objective findings during the period, including normal
gait, good strength, and good range of motion."  Tr. 196.  But
the ALJ did not explain how normal gait, good strength, and good
range of motion translate into a capacity for "light lifting and
light exertion sitting and standing."  Id.  And had the ALJ
attempted such an explanation, he would have run the risk of
impermissibly "interpret[ing] raw medical data in functional
terms."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per
curiam) (citations omitted).  Moreover, while the ALJ referred
generally to "the objective findings during the period," id., he
did not specifically identify evidence in the case record that
supports his assertion.  So, as with the ALJ's determination

that Dr. Soumekh's opinions were inconsistent with the evidence
of Willey's daily activities, his determination that those
opinions were inconsistent with the medical evidence, as that
determination is expressed in his decision, does not appear to
be a good reason for discounting Dr. Soumekh's opinions.

In sum, because Dr. Soumekh was a treating source, his
opinions are presumptively entitled to controlling weight.  That
presumption is rebuttable, see Berrios Lopez v. Sec'y of HHS,
951 F.2d 427, 431 (1st Cir. 1991) (per curiam), but here, the
ALJ did not even evaluate Dr. Soumekh's most important opinion
and did not give good reasons for discounting several of his
other opinions.  Remand is required.


## Conclusion

For the reasons given, the Acting Commissioner's motion for
an order affirming her decision (doc. no. 11) should be denied,
and Willey's motion to reverse that decision (doc. no. 10)
should be granted to the extent that the case is remanded to the
Acting Commissioner for further proceedings, pursuant to
sentence four of 42 U.S.C. § 405(g).

Any objection to this Report and Recommendation must be
filed within 14 days of receipt of this notice.  See Fed. R.
Civ. P. 72(b)(2).  Failure to file an objection within the

14

specified time waives the right to appeal the district court's

order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57

(1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617

F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by

objections to magistrate judge's report are subject to review by

district court; issues not preserved by such objection are

precluded on appeal).


_____
Andrea K. Johnstone
United States Magistrate Judge

April 7, 2016

cc:  Raymond Kelly, Esq.
     Terry Ollila, Esq.